# CHAUNCEY K. CONDEE

### v.

# JOSEPH R. CRIPPS.

1. SALE OF CHATTELS—MISTAKE AS TO IDENTITY OF PROPERTY.— A, who, by agreement, had fowls running in a common field with B, agrees to sell to C twenty-five turkeys to be separated and cooped by A before delivery. In the absence of A, C's servant comes for the fowls and, supposing it would be satisfactory to A, shoots and takes away twenty-five turkeys. By mistake, he shoots and takes away in the number fourteen of B's turkeys. A brings suit against C for the price of the twenty-five turkeys. *Held*, that A sold and was to deliver his own turkeys and the stipulation that A was to select and coop the turkeys, was waived by C and he was allowed to shoot that number of those belonging to A. He was not authorized to kill B's turkeys and B could maintain trespass against him. The mistake of C, as to the identity and ownership of the property was not a compliance with the contract on the part of A.

2. VENDOR AND VENDEE—EVIDENCE.—The rule that a vendee having received from the vendor the article purchased, can not retain the article and refuse to pay the price thereof, does not apply, since C never received from A the property purchased, for A not being in possession of nor claiming any interest in B's fourteen turkeys, no obligation rests upon C to pay A for them as property sold and delivered. Under these circumstances, it was error for the court to refuse to allow C to show that B, in fact, owned the fourteen turkeys and asserted his right thereto and that C had yielded to such paramount title and satisfied the claim.

APPEAL from the Circuit Court of De Kalb county; the Hon. CHARLES KELLUM, Judge, presiding. Opinion filed December 28, 1882.

The appellee in December, 1880, sold to appellant twenty-five turkeys to be caught and cooped by the appellee upon his premises, and then to be taken away by appellant at the price of seven cents per pound live weight.

At the time he was to receive the turkeys, the appellant sent his servant to get them, who found the appellee absent from home and no turkeys cooped or set apart from the flock for him. It was then proposed by appellant's servant and the hired man of appellee that they should get the number

out of the flock then in the woods and fields of appellee. Accordingly, the servant of appellant shot twenty-four, dressed them upon the premises, and took them to his employer's butcher shop where they were sold in his trade.

On the trial below he offered to prove that fourteen of the fowls shot by his servant belonged to one Barry who claimed them of him and that he had paid Barry therefor; that Barry's farm adjoined that of appellee and that by agreement the turkeys of appellee and Barry were allowed to run in common, in the woods and pastures.

This proposed evidence was excluded by the court. The plaintiff recovered the whole amount claimed and defendant appealed and the principal ground urged for a reversal of the judgment is the action of the court in refusing such offered evidence.

Messrs. JONES & CARNES, for appellant; cited McGoon v. Ankeny, 11 Ill. 593; O'Keefe v. Kellogg, 15 Ill. 347; Linton v. Porter, 31 Ill. 107.

Evidence which forms part of the *res gestæ* should be admitted: 1 Greenl. on Ev. § 108.

Owners of property do not lose their title to the same by an unauthorized sale by their bailee: Burton v. Curyea, 40 Ill. 320; Faucett v. Osborne, 32 Ill. 411; Roland v. Grundy, 5 Ohio, 182.

A purchaser of realty may yield to paramount title and sue on covenant: Harding v. Larkin, 41 Ill. 416; McConnell v. Downs, 48 Ill. 272; Sisk v. Woodruff, 15 Ill. 15; Dugger v. Oglesby, 99 Ill. 405: 2 Greenl. on Ev. § 244.

A party, sued for purchase price, is not driven to his cross-action, but may recoup damages, if covenants are broken: Christy v. Ogle, 33 Ill. 297; Love v. Wilson, 81 Ill. 529.

These principles hold true in cases of sale of chattels: Bordwell v. Collier, 45 N. Y. 494; 6 Wait's Actions and Defenses, 723; Peck v. Hensley, 20 Texas, 673; Sweetman v. Prince, 26 N. Y. 224.

Mr. J. J. FLANNERY and Mr. G. W. DUNTON, for appellee;

that if the property taken did not belong to appellee, then appellant was guilty of trespass and can not now take advantage of his own wrong: 14 Johnson Rep. 406.

Personal property in the adverse possession of another, claiming it as his own, can not be sold even by the real owner: McGoon v. Ankeny, 11 Ill. 558; O'Keefe v. Kellogg, 15 Ill. 347.

A debtor for goods sold or money loaned or deposited, can not set up as a defense, against the claim of his creditor that his title to the property is defective or wrong: Vibbard v. Johnson, 19 Johnson Rep. 77; Bigelow on Estoppel, 387; Linton v. Porter, 31 Ill. 107; Lund v. Seamen's Bank, 37 Barb. 129.

PILLSBURY, P. J.   Cripps claimed no ownership or right of possession in any turkeys belonging to Barry, neither did he sell nor intend to sell any except his own.

He owned a flock of turkeys and agreed to sell Condee twenty-five of them, no particular ones being designated at the time, but they were to be separated and cooped by Cripps before delivery.   This he did not do; and the appellant, by his servant, supposing it would be satisfactory to Cripps, concluded to select the number purchased from the flock, in the woods and fields.

Had he only shot the turkeys that belonged to Cripps' no question would have been made as to the right of plaintiff to recover.   If Cripps and Barry, by agreement, allowed their fowls to run in a common field or pasture, those belonging to Barry were no more in the possession of Cripps than if they were confined in the separate field of the true owner.

Cripps sold and was to deliver his own turkeys, and the most that can be said of the transaction is, that the stipulation in the contract that Cripps was to select the number sold from the flock and coop them, was waived by Condee, and he was allowed to shoot that number of those belonging to Cripps.

The appellant was not authorized to kill those belonging to Barry, and if he did so, it was a trespass by him for which Barry could maintain his action and recover the value of the

fowls killed, but in no sense can it be said that such mistake upon his part as to the identity and ownership of the property was a compliance with the contract upon the part of Cripps.

If fourteen of the turkeys thus killed belonged to Barry then Condee never received the property from Cripps that he purchased, and Cripps not being in possession of them, nor claiming any interest in them, no obligation rested upon Condee to pay Cripps for them as property sold and delivered.

The rule as announced in Linton v. Porter, 31 Ill. 107, that a vendee having received from the vendor the article purchased can not retain the article and refuse to pay the price therefor, does not apply, as that case shows that Linton received from Mrs. Porter the identical article purchased and retained peaceable and undisputed possession of it at time of trial, no paramount title having been asserted to it.

In such case it is clear that a failure of consideration can not be predicated upon the alleged breach of the implied warranty of title.

The facts in this case, however, are very different. If Barry having paramount title to the fourteen turkeys had replevied them, could Condee have maintained an action against Cripps for a breach of the implied warranty of title? Clearly not.

It would have been a sufficient answer that Cripps did not sell or deliver them to Condee as his own, but that Condee killed them without his consent and no claim to the ownership or possession thereof was ever asserted by him or transferred to Condee.

Under the circumstances of this case we have no doubt that Condee had the right to show that Barry in fact owned the fourteen turkeys and asserted his right thereto, and that he yielded to such paramount title, and satisfied the claim either by a surrender of the property or by paying for it.

As he was not permitted to show this, we think there is error.

The judgment will be reversed and the cause remanded.

Judgment reversed.